# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LEE,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                    Defendant.<br>_____ | 1:10-cv-01550 SKO<br><br>**ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 10, 11.)

**FACTUAL BACKGROUND**

Plaintiff was born in 1955, has obtained a General Education Development certificate, and has attended some community-college classes. (Administrative Record ("AR" 34, 520-21.) Plaintiff has worked as a restaurant cook and a hotel housekeeper, but has not worked since October 2005. (AR 70, 143.) On October 4, 2005, Plaintiff filed an application for SSI, alleging several impairments including fallen arches and a heart problem. (AR 49, 60.)

Plaintiff has previously filed numerous applications for SSI.[2] (AR 25-26.) Plaintiff has experienced continuous physical problems associated with arthritic and degenerative body pain, hypertension, and obesity. (AR 34.) These ongoing conditions have resulted in Plaintiff's increased issues with depression, anxiety and a mood disorder, which have rendered her unable to perform past relevant work. (AR 28, 34.)

**A.   Medical Evidence**

    **1.   Yang Michelle Sun, M.D.**

On August 26, 2006, Yang Michelle Sun, M.D., a state agency physician specializing in internal medicine, examined Plaintiff. (AR 233-37.) Dr. Sun opined that Plaintiff could (1) stand and walk six hours in an eight-hour workday; (2) sit without restrictions for an eight-hour workday; and (3) lift fifteen pounds frequently and up to thirty pounds occasionally. (AR 237.) Dr. Sun noted Plaintiff's postural limitations due to lower-back pain, but found no limitations for reaching, handling, feeling, grasping, or fingering.[3] (AR 237.) Dr. Sun also opined that Plaintiff had no

---

[2] Plaintiff filed applications for SSI on April 18, 1977, November 17, 1987, November 25, 1992, December 28, 1993, March 3, 1995, and July 9, 1996, all of which were all subsequently denied and became final and binding as Plaintiff did not request review of those denials. (*See* AR 25.) Plaintiff filed an application for SSI on September 13, 1999, which was denied on November 2, 1999, and after further appeal Plaintiff received an unfavorable Administrative Law Judge ("ALJ") decision on January 24, 2001. (*See* AR 25.) Plaintiff requested review but her request was denied and therefore became final and binding. (*See* AR 25.) Plaintiff filed an application for SSI on March 20, 2001, which was denied on June 6, 2001. (*See* AR 25.) She requested a hearing on the denial but the matter was dismissed on May 24, 2002, when she failed to appear at the hearing. (*See* AR 25-56.) Plaintiff filed applications for SSI on September 10, 2003, May 18, 2004, and October 15, 2004, which were all subsequently denied and became final and binding as Plaintiff did not request review of those denials. (*See* AR 26.)

[3] Reaching, handling/grasping, feeling, and fingering are physical demand components the Dictionary of Occupational Titles uses to define job requirements. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles 1993 Edition*, Appendix C, Physical Demands, SCODICOT APP. C. Fingering is distinguished from grasping or handling in that it involves "[p]icking, pinching, or otherwise working primarily with

communicative or workplace environmental limitations. (AR 237.) Dr. Sun noted, however, that Plaintiff had a flat mood during the examination, and was "highly suspicious" that Plaintiff was suffering from depression. (AR 237.)

### 2. Catherine Eskander, M.D.

On October 1, 2006, Catherine Eskander, M.D., a reviewing state agency physician, completed a physical residual functional capacity ("RFC")[4] questionnaire. (AR 289-96.) Dr. Eskander found Plaintiff able to (1) lift twenty pounds occasionally and ten pounds frequently; (2) stand/walk/sit about six hours in an eight-hour workday; and (3) push and/or pull without limitations. (AR 290.) She also found Plaintiff has no postural, manipulative, visual, or environmental limitations. (AR 291-93.) Dr. Eskander opined that Plaintiff was partially credible as to the severity of the pain in relation to her impairments and noted that Plaintiff is capable of light work with possible modifications. (AR 294, 97-98.)

### 3. Philip M. Cushman, Ph.D.

On December 2, 2006, Philip M. Cushman, Ph.D. performed a psychological evaluation of Plaintiff's cognitive functioning. (AR 238-43.) Dr. Cushman opined that Plaintiff may have difficulty performing detailed or complex tasks, but suspected that Plaintiff could easily perform simple and repetitive tasks. (AR 243.) Dr. Cushman also noted that Plaintiff may have difficulty maintaining regular attendance at a job because of her conditions. (AR 243.) Further, he suspected that although Plaintiff would have a difficult time working a normal workday or workweek she "most likely could work part-time." (AR 243.) Dr. Cushman assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60, indicating moderate difficulties in social functioning, and added that Plaintiff may experience difficulty functioning in a social environment. (AR 30, 243.)

---

fingers rather than with the whole hand or arm as in handling." *Id.*

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

####    4.     Dr. Harrison

On December 27, 2006, Dr. Harrison, a reviewing state agency psychiatrist, completed a mental RFC questionnaire. (AR 299-314.) Dr. Harrison noted Plaintiff had a moderately limited ability to, among other things, complete a normal workday and workweek without interruptions, interact socially with coworkers and the general public, and adapt to changes in the workplace. (AR 300.) Dr. Harrison opined that Plaintiff is capable of learning and performing simple, repetitive tasks with limited public contact. (AR 313.)

####    5.     Paul Weiner, D.P.M.

On April 20, 2007, Paul Weiner, D.P.M., a podiatrist, completed a mental disorders evaluation form concerning Plaintiff. (AR 261-63.) Dr. Weiner opined, in check-box form, that Plaintiff's mental impairments would not affect her ability to complete a normal workday and workweek. (AR 263.) Dr. Weiner noted, however, that he only treated Plaintiff for issues related to her feet. (AR 263.)

####    6.     M. Morando, M.D.[5]

On September 24, 2007, Dr. Morando, a non-examining state agency physician, reviewed the file and affirmed Dr. Harrison's assessment of Plaintiff's mental functioning capacity that Plaintiff could perform simple, repetitive tasks with limited public contact. (AR 313-14.)

####    7.     David Katz, M.D.

On October 19, 2007, David Katz, M.D., Plaintiff's treating physician, completed an arthritis RFC questionnaire and diagnosed Plaintiff with chronic pain syndrome, myalgias, depression, and hypertension cardiomyopathy. (AR 331-37.) Plaintiff's prognosis was described as "fair." (AR 332.)

Dr. Katz opined in the questionnaire that Plaintiff is (1) incapable of low-stress jobs due to chronic pain and psychological conditions; (2) able to walk two city blocks without rest or severe pain; (3) sit for thirty minutes before needing to get up; (4) stand for ten minutes before needing to sit or walk around; and (5) sit and stand/walk less than two hours in an eight-hour workday. (AR

---

[5] Dr. Morando's specialty code is noted as "37" which is delineated as a psychiatry specialty. *See* Social Security Program Operations Manual System ("POMS") Sections DI 28086.031, 26510.090(D).

333-34.) Dr. Katz further opined that during an eight-hour workday, Plaintiff needs to walk for ten minutes every thirty minutes, take one to two unscheduled breaks, and elevate her legs horizontally fifty percent of the workday. (AR 335.) Further, Dr. Katz restricted Plaintiff to lifting less than ten pounds with rare frequency, and never lifting more than ten pounds. (AR 336.) He opined Plaintiff should only rarely twist, and is unable to crouch, stoop or climb. (AR 336.) Dr. Katz also noted that Plaintiff has significant limitations in repetitive reaching, handling, and fingering and will likely miss more than four days of work per month because of her impairments. (AR 336-37.)

On February 21, 2008, Dr. Katz completed a physical RFC questionnaire (AR 325-30), but did not provide a specific diagnosis of Plaintiff's conditions because rheumatology and podiatry consultations were pending. (AR 326.) Dr. Katz also listed Plaintiff's prognosis as "unknown." (AR 326.) Dr. Katz opined that Plaintiff, during an average eight-hour working day, is never able to lift/carry any amount of weight; is only able to sit for an hour or less; and can stand/walk for only two hours. (AR 327.) Dr. Katz also noted that Plaintiff could not perform full-time work requiring sustained activity. (AR 328.)

### 8. Acelita Amparo, M.D.

On December 31, 2007, Plaintiff was seen by Acelita Amparo, M.D., at Sacramento County Mental Health where she underwent a psychological evaluation. (AR 317-20.) The medical evaluation showed that Plaintiff's medical issues, including anxiety and depression, were a "good part of her problem" and resulted in Plaintiff's inability to "work and function the way she wanted." (AR 318.) Dr. Amparo stated that Plaintiff would be able to function better if she were relieved of her "pain and symptoms" and opined that Plaintiff would be unable to concentrate well in school. (AR 318.)

On February 14, 2008, Dr. Amparo conducted a second evaluation of Plaintiff. (AR 316.) She opined that Plaintiff was suffering from "ongoing low-grade depression" which precluded her from working full-time. (AR 316.) Dr. Amparo also noted that Plaintiff's medical issues were worsening, and problems with anxiety and depression were increasing. (AR 31.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 25, 49-59.) On June 10, 2008, Plaintiff appeared and testified at a hearing before ALJ Mark C. Ramsey. (AR 25, 509-57.)

On September 8, 2008, the ALJ issued a decision finding Plaintiff not disabled, as defined by the Social Security Act, since the application date of October 4, 2005. (AR 25-36.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since October 4, 2005; (2) had severe impairments based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or a combination of impairments that meets or equals a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform simple unskilled light work that existed in the national economy. (AR 28-36.)

The ALJ also found that Plaintiff (1) had sufficient use of arms, hands and legs with the ability to walk independently; (2) had no significant muscle weakness or loss of control due to nerve damage; (3) was obese which negatively affected her energy level, enthusiasm and agility; (5) was able to think, communicate and act in her own interest; (6) was able to adjust to ordinary emotional stresses, get along with others, do her usual activities, care for her personal needs, and remember and follow basic instructions; and (7) could effectively control hypertension with blood pressure medication regimens. (AR 31.)

These findings resulted in the ALJ's determination that Plaintiff "has mild restrictions in her activities of daily living, mild difficulty in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace, and has not experienced frequent episodes of decompensation in a work-like setting." (AR 30.)

In his findings, the ALJ gave "significant weight" to the medical opinion of Dr. Sun, noting that the opinion was "supported by extensive objective findings" and was "consistent with the body of evidence." (AR 32.) In determining Plaintiff's functioning capacity, the ALJ gave "substantial weight" to Dr. Cushman's psychological evaluation. (AR 30.) The ALJ gave "minimal weight" to the medical opinion of treating physician Dr. Katz. (AR 32.)

Plaintiff sought review of this decision before the Appeals Council. (AR 14-17, 20-21.) The Appeals Council denied review on July 29, 2010. (AR 6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On August 27, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in rejecting the examining and treating opinions indicating Plaintiff's difficulties in sustaining a normal, full-time work schedule.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or

impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments (the "Listings"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.  Weight of the Medical Evidence Related to Plaintiff's Mental Limitations**

**1.  Contentions of the Parties**

Plaintiff asserts that the ALJ ignored the "unanimous" opinions of the treating and examining physicians that she is unable to complete a normal workday or workweek due to her mental/emtional issues. (Doc. 13, 6-11.) Specifically, Plaintiff asserts that Dr. Cushman noted Plaintiff would have difficulty working a normal workday or workweek, and could "most likely work part time." (Doc. 13, 6:19-21; *see* AR 243.) Plaintiff notes Dr. Amparo's opinion that Plaintiff has an inability to work

because of medical issues. (Doc. 13, 6:21-25, *see* AR 318.) Plaintiff also asserts that Dr. Katz' medical reports indicate that she had more than three absences a month from her work due to medical issues. (Doc. 13, 6:25-7:1; *see* AR 329, 337.) Finally, Plaintiff contends that the non-examining state agency physician, Dr. Harrison, opined that Plaintiff's ability to complete a normal workday or workweek was moderately limited. (Doc. 13, 7:1; *see* AR 300.) Plaintiff argues that a person is disabled when she is unable to perform regular and continuous gainful work activity. Sustaining work activity on a "regular and continuing basis" means the ability to sustain work activity for 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. In light of the examining and treating physician's findings that she would have difficulty completing a normal workweek, Plaintiff asserts that the ALJ failed to credit this medical evidence and erred in finding that she could maintain consistent employment and perform substantial gainful work activity. (Doc. 13, 7:25-10:23.)

The Commissioner disputes that the medical opinions of record unanimously indicate Plaintiff's inability to complete a normal workday or workweek. (Doc. 18, 7:11-20.) The Commissioner asserts that, while the medical evidence indicates that Plaintiff may have difficulty completing a normal workday or workweek, none of the doctors whom the ALJ credited opined that Plaintiff was entirely precluded in her ability to complete a normal workday or workweek. (Doc. 18, 7:11-20.) In making this assertion, the Commissioner relies on Dr. Harrison's opinion that Plaintiff could maintain a regular work schedule with little to no limitation (AR 299) and Dr. Cushman's opinion that Plaintiff could easily perform simple, repetitive tasks (AR 243). (Doc. 18, 7:16-18.) The Commissioner also asserts that, although Plaintiff contends that Dr. Sun's opinion supports a finding that she was precluded from completing a normal workweek, Dr. Sun opined as to Plaintiff's physical limitations and did not provide any opinion that Plaintiff's condition prevented her from working a normal workday or workweek. (Doc. 18, 7:11-13; *see* AR 233-37.) Further, to the extent that Dr. Cushman opined as to a moderate limitation in Plaintiff's ability to complete a normal workday or workweek, the ALJ specifically discussed this limitation, but determined that the weight of the evidence indicated that Plaintiff would nonetheless be able to complete a normal workweek or workday, albeit with challenges and moderate difficulty. This noted difficulty did not preclude

Plaintiff from performing simple, unskilled work, and the Commissioner asserts the ALJ's decision should be affirmed. (Doc. 18, 7:23-8:10.)

**2. Analysis**

**a. Moderate Difficulties in Mental Functioning Are Not Per Se Disabling**

In considering Plaintiff's mental limitations, the ALJ discussed Dr. Cushman's opinion and found that Plaintiff was only mildly limited in her ability to perform daily activities and maintain social functioning; she had moderate deficiencies of concentration, persistence, or pace; and experienced no frequent episodes of decompensation in a work-like setting. (AR 30.) The ALJ ultimately concluded that Plaintiff retained the mental residual functional capacity to perform simple, unskilled work. In doing so, the ALJ found that the combined opinions of Drs. Cushman, Amparo, Weiner, Harrison, and Morando provided substantial evidence supporting the RFC assessment. (AR 33-34.)

Drs. Cushman, Harrison, and Morando each indicated that Plaintiff was experiencing, or would experience in the future, difficulty maintaining a full-time work week and regular schedule. However, moderate difficulties in various areas of functioning, such as difficulty in the ability to maintain regular attendance at a job or to complete a normal workday and workweek without interruption from mental symptoms, are not per se disabling nor do they preclude the performance of simple, repetitive work. To the extent that the physicians the ALJ credited opined that Plaintiff was moderately limited in her ability to complete a normal workweek, this is not tantamount to medical evidence that Plaintiff is per se precluded from working full-time. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076-77 (9th Cir. 2007) (holding that a diagnosis of "moderately significant forms of depression" and moderate limitations in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, complete a normal workday and workweek without interruption from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods did not preclude a finding of nondisability); *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002) (affirming the ALJ's finding that a claimant who had "moderate mental residual functional capacity limitations" as well as a "marked limitation in her ability to maintain

concentration over extended periods" could perform the unskilled jobs identified by the vocational expert).

Nonetheless, Plaintiff's discussion of the medical evidence presents several issues that undercut the ALJ's assessment of Plaintiff's mental capacity and prevent the Court from concluding that the ALJ's decision with regard to the extent of Plaintiff's mental limitations is supported by substantial evidence.

### b. Lack of Substantial Evidence to Support Non-Disability Finding

The RFC assessment is ordinarily the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment, therefore, "must include a discussion of the individual's abilities *on that basis*." *Id*. (emphasis added). Plaintiff asserts that the medical evidence establishes that her mental limitations prevent her from performing sustained work activities on a "regular and continuing basis," and the ALJ inaccurately assessed her RFC without incorporating the mental limitations as opined by her physicians.

In evaluating Plaintiff's mental limitations, the ALJ noted Dr. Cushman's opinion and concluded that it supported a finding that Plaintiff could perform simple, unskilled, light work. (AR 33-34.) However, Dr. Cushman's opinion is ambiguous with regard to the extent of Plaintiff's mental limitations. Dr. Cushman noted that he "suspect[ed that Plaintiff] would have a difficult time working a normal workday or [workweek]. She most likely could work part time." (AR 243.) By suggesting that she "most likely could work part time," Dr. Cushman's opinion implies that Plaintiff would not be able to maintain regular attendance to complete a *full-time*, normal workweek, and thus that Plaintiff is *more* than moderately limited in her ability to complete a normal workweek.

In considering Dr. Cushman's opinion, the ALJ discussed Dr. Cushman's finding that Plaintiff could easily perform simple and repetitive tasks, that she was able to follow simple instructions from supervisors, and that she was capable of dealing with the usual stressors encountered in a competitive work environment. (AR 33.) Notwithstanding Plaintiff's retention of the mental ability to perform simple tasks and deal with regular stressors at a job, she may nonetheless be unable to

maintain regular attendance at a full-time job because of pain and/or malaise. In other words, while Plaintiff may have the mental acuity to perform simple, unskilled work, she may have emotional difficulties attending a job on a regular schedule.

While Dr. Cushman noted that Plaintiff retained abilities that are compatible with light, unskilled work, he implied that her emotional limitations will prevent her from performing those tasks on a full-time basis. It is the ALJ's duty to clarify ambiguities in the medical evidence; however, without clarification of this ambiguity in Dr. Cushman's opinion, it does not constitute substantial evidence supporting the proposition that Plaintiff retains the ability to sustain normal workdays and workweeks on a regular and continuous basis. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (the ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and resolving medical ambiguities). Here, the failure to resolve this ambiguity is not harmless because the remainder of the medical evidence does not provide substantial evidence that Plaintiff is able to maintain a normal, full-time work schedule in light of her mental and emotional limitations.

The ALJ cited Dr. Amparo's December 2007 opinion that Plaintiff's medical problems, rather than psychological problems, rendered her unable to perform as fully as Plaintiff desired. (AR 33, 318.) The ALJ concluded that Dr. Amparo's opinion supported the proposition that Plaintiff had no mental/emotional limitations that would prevent her from performing simple, unskilled work on a sustained basis. However, the ALJ failed to discuss Dr. Amparo's subsequent February 2008 report that indicated that Plaintiff's mental conditions prohibited her from working full-time. (AR 316.) Specifically, in a second examination, Dr. Amparo noted that she believed Plaintiff "suffered from ongoing low-grade depression, which seems for her not to be able to work full time." (AR 316.) The Court expresses no view whether this opinion is adequately supported by findings or whether it should be credited, but the ALJ's failure to discuss the opinion was error as it contained potentially significant and relevant medical evidence as to Plaintiff's ability to maintain sustained work activity, particularly in light of the ambiguities contained in Dr. Cushman's opinion with regard to Plaintiff's ability to maintain full-time work due to pain and malaise. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (internal quotation marks omitted) (while the ALJ has no duty to discuss

*all* of the evidence contained in the record, he or she must explain why "significant probative evidence has been rejected"). For example, Dr. Amparo opined that Plaintiff could not work full-time due to ongoing depression issues. (AR 316.) She also stated that Plaintiff was not able to concentrate well in school, implying an inability to concentrate on the job, a statement consistent with Dr. Cushman's assessment of Plaintiff's emotional limitations. (AR 318.) Dr. Amparo's opinion could reasonably alter the ALJ's interpretation of Dr. Cushman's opinion that Plaintiff "most likely could work part-time" and would have "a difficult time working a normal workday or work week" and resolve the ambiguity in Dr. Cushman's opinion in Plaintiff's favor.

The ALJ relied upon Dr. Weiner's opinion that Plaintiff has an unlimited ability to understand, remember and carry out both simple and more complex instructions; the ability to complete a normal workday/workweek without interruptions; and respond appropriately to changes in a work setting. (AR 33.) The ALJ noted that Dr. Weiner established that Plaintiff has a good ability for maintaining concentration, persistence, and attention and in performing activities within a schedule (including maintaining regular attendance). (*See* AR 33, 259-81.) However, Dr. Weiner's opinion is not substantial evidence of Plaintiff's mental functioning because Dr. Weiner is a podiatrist who never treated Plaintiff for anything other than her foot problems. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion").

By letter, the agency requested that Dr. Weiner provide all his medical records regarding Plaintiff and that he provide a statement expressing his opinion about Plaintiff's ability, despite the functional limitations imposed by her impairments, to perform work-related physical and/or mental activities "as appropriate." (AR 260.) Unfortunately, the agency sent Dr. Weiner the "Short-Form Evaluation for Mental Disorders." (AR 261.) Dr. Weiner completed the form as to Plaintiff's mental abilities, but specifically noted that he had seen her "only for her feet problems." (AR 263.) The form requires the signature of a psychiatrist or a psychologist; Dr. Weiner crossed out these delineations and placed in the word "Podiatrist," and then signed the form. (AR 263.) While a podiatrist is a medical source, the evidence, not surprisingly, indicates that he did not treat Plaintiff for her *mental* condition and thus had no basis on which to formulate a *medical opinion* as to her

13

mental abilities. The ALJ's reliance on this medical report was flawed for this reason, and Dr. Weiner's opinion is not substantial evidence of Plaintiff's mental functional capacity.

Finally, the only medical opinions that provide unambiguous support for the proposition that Plaintiff's mental condition does not limit her more than moderately are those of Drs. Harrison and Morando. (AR 300, 313-14.) As set forth above, because Dr. Cushman's opinion is ambiguous, Dr. Amparo's opinion is not fully discussed, and Dr. Weiner's opinion as a podiatrist is not substantial evidence as to Plaintiff's mental functioning, Dr. Harrison's and Dr. Morando's opinions stand alone.[6] Dr. Morando's opinion is undercut by the fact that he reviewed Dr. Weiner's April 2007 report as the basis for his agreement with Dr. Harrison that Plaintiff was moderately limited in her ability to maintain a regular work schedule. (*See* AR 313.) As Dr. Weiner's opinion as to Plaintiff's *mental* functioning has little evidentiary value, Dr. Morando's opinion does not constitute substantial evidence. Moreover, if the ambiguity in Dr. Cushman's opinion is resolved in Plaintiff's favor or Dr. Amparo's opinion regarding Plaintiff's inability to work full-time is credited, Dr. Harrison's opinion as a non-examining consulting physician is not, by itself, substantial evidence to support a finding that Plaintiff's limitations do not more than moderately affect her ability to complete normal, continuous full-time work. *See Lester*, 81 F.3d at 831 (unless the opinion is supported by independent clinical findings, the report of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or treating physician).

For these reasons, the Court cannot conclude that substantial evidence supports the ALJ's determination as to Plaintiff's mental/emotional ability to perform sustained work activity.

---

[6] Dr. Katz found Plaintiff was restricted from working a full-time job on a sustained basis due to significant physical limitations, and she would be absent more than four times per month due to her impairments. (AR 335-37.) The ALJ found Dr. Katz's medical opinion too restrictive regarding Plaintiff's limitations because the opinion lacked a specific diagnosis, radiological findings, or other diagnostic findings to support the extent of the limitations opined. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings). Plaintiff makes no argument that the ALJ improperly weighed Dr. Katz' opinion.

1 **B.      Presumption of Continuing Disability**

2        In a footnote, Plaintiff asserts that the ALJ erroneously applied the doctrine of *res judicata*
3 to Plaintiff's disability application and found that she did not overcome the presumption of
4 continuing non-disability from an earlier denial of benefits. (Doc. 13, 10:23, n.2.) Plaintiff argues
5 that the medical evidence rebuts any finding the ALJ may have made in a prior 2001 decision. (Doc.
6 13, 10:23, n.2). As the medical evidence requires additional assessment, Plaintiff is free to raise this
7 argument on remand.

8 **C.      Remand is Required**

9        "The court shall have power to enter, upon the pleadings and transcript of the record, a
10 judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,
11 with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases,
12 the decision to remand to the Commissioner for further proceedings or simply to award benefits is
13 within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If
14 additional proceedings can remedy defects in the original administrative proceedings, a social
15 security case should be remanded. Where, however, a rehearing would simply delay receipt of
16 benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal
17 quotation marks omitted); *see also Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399
18 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would
19 be served by further administrative proceedings, or where the record has been thoroughly
20 developed." (citation omitted)).

21        As it is the ALJ, and not the court, that must assess and resolve ambiguities in the medical
22 evidence, this case is suited for remand and reconsideration rather than an award of benefits. The
23 ALJ should consider the medical evidence in light of the discussion above, and issue new findings
24 that clearly resolve any ambiguities in the medical evidence and discuss the significant and relevant
25 medical evidence. The Court expresses no view as to how the ALJ should resolve the ambiguity in
26 Dr. Cushman's opinion or how Dr. Amparo's February 2008 opinion should be weighed on remand
27 – those factual determinations are properly left in the capable hands of the ALJ. *Vasquez v. Astrue*,
28

571 F.3d 586, 591 (9th Cir. 2009) (it is the province of the ALJ to resolve ambiguities and conflicts in the medical evidence).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Michelle Lee and against Defendant Michael J. Astrue, Commissioner of Social Security. Pursuant to the Court's scheduling order, any motions or stipulations regarding attorney's fees pursuant to the Equal Access to Justice Act shall be filed within thirty (30) days from the date of this order. (*See* Doc. 8, ¶ 10.)

IT IS SO ORDERED.

**Dated:   January 25, 2012**              /s/ Sheila K. Oberto
                                           UNITED STATES MAGISTRATE JUDGE